<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE ALLERGAN ERISA LITIGATION | Master File No. 17-1554 (SDW) (LDW) |
| | **OPINION** |
| | July 2, 2018 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**WIGENTON,** District Judge.

Before this Court is Defendants' Motion to Dismiss Plaintiffs Andrew J. Ormond ("Ormond") and Jack Xie's ("Xie") Consolidated Class-Action Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).  Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2).  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Ormond and Xie were employees of Allergan plc ("Allergan"), and are participants in the Allergan, Inc. Savings and Investment Plan (the "Plan") and its predecessor plans (collectively, the "Plans")[1].  (Consol. Compl. ¶¶ 1, 11-12.)  Plaintiffs have brought this action

---

[1] Allergan was formed on March 17, 2015 following a reverse merger agreement whereby Actavis plc ("Actavis") acquired Allergan, Inc.  (Consolidated Class Action Compl. ¶ 13, ECF No. 16 [hereinafter Consol. Compl.].)  That same day, Allergan, Inc.'s Employee Stock Ownership Plan ("ESOP") was merged into the Plan.  (*Id.* ¶ 1 n.1.)  On January 1, 2016, the Actavis 401(k) Plan changed its name to the Allergan, Inc. 401(k) Plan, (*Id.*); and on October 3,

on behalf of the Plans, individually, and as representatives of a class of similarly-situated participants in the Plans[2] (collectively, "Plaintiffs").  (*Id.* ¶¶ 1, 77.)  They have filed suit against the Plans' alleged fiduciaries: Allergan; Allergan's Employee Benefits Plan Committee, Oversight Committee, and Investment Committee, as well as the individual members of those committees[3] (collectively, the "Committee Defendants"); and the individual members of Allergan's Board of Directors[4] (the "Monitoring Defendants") (collectively, "Defendants").  (*Id.* ¶¶ 2, 21-63.)

Plaintiffs allege that from October 29, 2013 through November 2, 2016 (the "Class Period"), (*id.* ¶¶ 93-115), Allergan made statements that "misrepresented and failed to disclose adverse facts pertaining to Allergan's business, operational and financial results[,]"  (*id.* ¶ 116). Specifically, Plaintiffs claim that Allergan colluded with pharmaceutical industry peers "to fix generic drug prices in violation of federal antitrust laws," creating excess revenue, and putting Allergan at risk of civil and criminal liability.  (*Id.* ¶ 116.)  They also claim that "Allergan lacked effective internal controls over financial reporting[.]"  (*Id.*)

Based on the foregoing, Plaintiffs allege that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") when they retained common stock in Allergan as an investment option in the Plan even though they knew or should have known that Allergan's statements artificially inflated its stock prices.  (*Id.* ¶¶ 2-3, 5, 117.)

---

2016, the Allergan, Inc. 401(k) Plan was merged with and into the Plan.  (*Id.*)  The Actavis 401(k) Plan is thus considered a predecessor plan.

[2] Plaintiffs have defined the class as:

> All persons, except Defendants and their immediate family members, who held Allergan Stock in the Plans between March 17, 2015, and November 2, 2016, inclusive, and all persons, except Defendants and their immediate family members, who purchased or held Actavis Stock in the Actavis Plan and/or the Allergan Plan between October 29, 2013, and June 14, 2015, inclusive.

(*Id.* ¶ 77.)

[3] Committee members include Karen Ling, Bryan Kavanaugh, Tessa Hilado, Robert Stewart, James D'Arecca, Stephen Kaufhold, Eric Stern, Kellie Sears, Kristen Allgor, Kate DiMarco, and John Does 1-20.  (*Id.* ¶¶ 34-44.)

[4] Board members include L. Saunders, Nesli Basgoz, M.D., Paul M. Bisaro, James H. Bloem, Christopher W. Bodine, Christopher J. Coughlin, Michael Gallagher, Catherine M. Klema, Peter J. McDonnell, M.D., Patrick J. O'Sullivan, Ronald R. Taylor, Fred G. Weiss, and Richard Roes 1-20.  (*Id.* ¶¶ 47-61.)

Plaintiffs claim that they have "suffered losses as a result of purchasing and holding Allergan Stock through [their] individual Plan account[s] during the Class Period." (*Id.* ¶¶ 11-12.)

On February 14, 2017, Plaintiff Xie filed a putative class-action complaint in the Central District of California. (ECF No. 1, Civ. No. 17-5070.)[5] On March 7, 2017, Plaintiff Ormond filed a similar complaint in the District of New Jersey. (ECF No. 1). On July 7, 2017, the parties to the action pending in California stipulated to transferring the matter to the District of New Jersey, which District Court Judge Cormac J. Carney so-ordered on July 10, 2017. (ECF Nos. 40-41, Civ. No. 17-5070.) On July 25, 2017, Plaintiffs Ormond and Xie moved to consolidate their actions and to appoint interim counsel. (ECF No. 11.) On August 16, 2017, Magistrate Judge Leda Dunn Wettre consolidated the actions under the caption "In re Allergan ERISA Litigation." (ECF No. 13.)[6] On October 23, 2017, Plaintiffs filed a three-count Amended Complaint alleging: Allergan and the Committee Defendants failed to prudently manage the Plans' assets in violation of ERISA §§ 404(a)(1)(B) and 405 (Count One); Defendants breached a duty of loyalty in violation of ERISA §§ 404(a)(1)(A) and 405 (Count Two); and Allergan and the Monitoring Defendants failed to adequately monitor other fiduciaries and provide them with accurate information in violation of ERISA § 404 (Count Three). (*See generally* Consol. Compl.) On February 2, 2018, Defendants filed the instant Motion to Dismiss. (ECF No. 19.) Plaintiffs opposed the motion on March 19, 2018, and Defendants replied on April 25, 2018. (ECF Nos. 21, 26.)

## I.   LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual

---

[5] Xie also filed an Amended Complaint on May 3, 2017. (ECF No. 35, Civ. No. 17-5070.)
[6] The August 16, 2017 Order was entered on the electronic case folder on August 17, 2017. (*Id.*)

allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## II.     DISCUSSION

To assert a claim for breach of fiduciary duty under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(2), Plaintiffs must establish that: "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012) (citing *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007)); *see also Braden*

*v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (requiring the same *prima facie* showing for a breach of fiduciary duty of prudence or loyalty as imposed by 29 U.S.C. § 1104).

### A. Plan Fiduciaries

Fiduciaries include named, as well as *de facto*, fiduciaries. *Jander v. Int'l Bus. Machs. Corp.*, 205 F. Supp. 3d 538, 542 (S.D.N.Y. 2016). The latter type is defined as "anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (internal citations omitted)); *see also* 29 U.S.C. § 1002(21)(A) (defining fiduciaries under ERISA). When a plaintiff alleges a breach of ERISA fiduciary duty, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person . . . was performing a fiduciary function . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291-92 (3d Cir. 2014) (quoting *Pegram*, 530 U.S. at 226).

Here, the parties dispute whether Allergan and the Monitoring Defendants were the Plans' fiduciaries under ERISA.[7] (*Compare* Defs.' Br. at 23, *with* Pls.' Opp'n Br. at 23, ECF No. 21.) Plaintiffs allege that Allergan was a *de facto* fiduciary because it "hired, and retained the right to terminate, a third party administrator[,]" (Consol. Compl. ¶ 18); and similarly, that the Monitoring Defendants were *de facto* fiduciaries because they "retained authority over any independent fiduciary," (*Id.* ¶ 49). However, without more, these allegations are insufficient to show that Defendants were *de facto* fiduciaries. *In re Citigroup Erisa Litig.*, No. 07-9790, 2009 WL

---

[7] There is no dispute that the Committee Defendants were fiduciaries. (Defs.' Mem. in Supp. of Mot. to Dismiss at 24, ECF No. 19-1 [hereinafter Defs.' Br.] ("The documents related to the Allergan Plan . . . all establish that the Plan Committee Defendants were fiduciaries for purposes of the claims asserted in this action.").)

2762708, at *14-15 (S.D.N.Y. Aug. 31, 2009) (finding that a defendant's "authority to hire and fire some of the named fiduciaries" was insufficient to show that it "exerted control over its employees' fiduciary responsibilities"); *see also In re Merck & Co., Secs. Derivative & Erisa Litig.*, No. 05-2369, 2006 WL 2050577, at *10 (D.N.J. July 11, 2006) (explaining that defendants could be deemed fiduciaries if they "exercised actual control over . . . decisions regarding the [p]lan's management[,]" and not just "the power to appoint and remove" named fiduciaries).

Plaintiffs also allege that Allergan was a fiduciary because it made SEC filings as the Plans' administrator.  (Consol. Compl. ¶ 19.)  However, "communications made by a company in SEC filings do not become fiduciary statements for ERISA plans unless they are '*intentionally* connected . . . to statements . . . about the future of benefits, so that its intended communication about the security of benefits was rendered materially misleading.'" *In re Bank of Am. Corp. Secs., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 756 F. Supp. 2d 330, 348 (S.D.N.Y. 2010) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996)).  Here, the Consolidated Complaint fails to allege that Defendants intentionally connected statements from SEC filings about Actavis and/or Allergan's financial condition to the future of the Plans' benefits.  Thus, Allergan's SEC filings did not transform it into the Plans' *de facto* fiduciary.

Furthermore, Plaintiffs allege that Allergan was a fiduciary because "it exercised discretionary authority or control over the administration and/or management of the Plans or disposition of the Plans' assets."  (Consol. Compl. ¶ 20.)  These conclusory statements are insufficient to state a claim against a purported ERISA fiduciary.  *See, e.g.*, *Jander*, 205 F. Supp. 3d at 542 (explaining that the allegation that a defendant had "ultimate oversight and was empowered to amend the Plan" was insufficient to establish that it was a *de facto* fiduciary); *In re Jpmorgan Chase & Co. Erisa Litig.*, No. 12-4027, 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016),

6

*aff'd sub nom. Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016) (describing allegations that defendant is a fiduciary because "it has discretionary authority and control regarding the administration and management of the Plans [sic] and its assets[]" as "bare legal conclusions").

Based on the foregoing, Plaintiffs' allegations are insufficient to state a claim against either Allergan or the Monitoring Defendants as *de facto* fiduciaries of the Plans.  Therefore, Plaintiffs' claims against Allergan and the Monitoring Defendants are dismissed as to all counts.

### B.  Duty of Prudence (Count I)

Under ERISA § 404(a)(1)(B), the duty of prudence requires a fiduciary to

> discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

29 U.S.C. § 1104(a)(1)(B).  This standard "turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, [and thus] the appropriate inquiry will necessarily be context specific."  *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014) (internal citations omitted).  "ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets."  *Perez v. First Bankers Trust Servs., Inc.*, No. 12-4450, 2017 WL 1232527, at *72 (D.N.J. Mar. 31, 2017) (citing *Fifth Third*, 134 S. Ct. at 2463).

As an initial matter, "[t]o plausibly allege violations of the duty of prudence based on non-public information, a plaintiff must allege that the defendants knew or should have known that the market price was based on materially false or misleading statements that would make it an imprudent investment."  *Fentress v. Exxon Mobil Corp.*, No. 16-3484, 2018 WL 1561820, at *4 (S.D. Tex. Mar. 30, 2018) (citations omitted).  Here, in alleging that Defendants knew or should

have known that Allergan stock was not a suitable or appropriate investment for the Plans, (Consol. Compl. ¶ 184), Plaintiffs rely on a 2014 letter from a U.S. senator and representative, and a 2015 subpoena from the U.S. Department of Justice, which requested information about Allergan's pricing of generic drugs.  (*Id.* ¶¶ 89-91, 118.)  Plaintiffs' allegations of wrongdoing are also based on news reports that federal charges might be filed against generic pharmaceutical companies for price collusion.  (*Id.* ¶¶ 121-23.)  These examples, standing alone, do not rise above the speculative level of misconduct.  *See In re Citigroup Erisa Litig.*, 104 F. Supp. 3d 599, 616 (S.D.N.Y. 2015) (holding that plaintiffs failed to state a claim because they "have not sufficiently alleged that there was any material, nonpublic information to be disclosed").  As pled, Plaintiffs have not set forth sufficient facts to establish or even infer that Defendants engaged in collusive and/or fraudulent activity during the Class Period such that they could have insider information to that effect.

Even if Defendants had inside information of fraud or collusion, Plaintiffs have not met the heightened pleading standard articulated in *Fifth Third* to maintain a cause of action for breach of the duty of prudence.  In *Fifth Third*, the Supreme Court held that

> [t]o state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it.

*Fifth Third,* 134 S. Ct. at 2472.  In other words, a complaint must plausibly allege that "a prudent fiduciary in the same position could not have concluded that the alternative action would do more harm than good."  *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016) (citing *Fifth Third,* 134 S. Ct. at 2463) (internal quotation marks omitted).

Here, Plaintiffs allege that Defendants "breached their duty of prudence by failing to provide complete and accurate information regarding Allergan's true financial condition and, . . .

by conveying inaccurate information regarding [Allergan's] business and industry." (Consol. Compl. ¶ 185.) Plaintiffs provide several alternative actions that the Plans' fiduciaries could have taken. (*Id.* ¶¶ 132-67.)

First, Plaintiffs assert that "Defendants could have disclosed (or caused others to disclose) Allergan's antitrust violations so that Allergan Stock would trade at a fair value." (*Id.* ¶ 138.) However, the Consolidated Complaint does not

> plausibly allege[] that a prudent fiduciary in . . . [D]efendant[s']
> position could not have concluded that . . . publicly disclosing
> negative information would do more harm than good to the fund by
> causing a drop in the stock price and a concomitant drop in the value
> of the stock already held by the fund.

*Fifth Third,* 134 S. Ct. at 2473.[8] Furthermore, courts have consistently ruled against Plaintiffs' argument that earlier disclosure would have been better than later or non-disclosure. *See, e.g.*, *Fentress*, 2018 WL 1561820, at *11 (listing series of cases that rejected "the theory 'that in virtually every fraud case, the truth will eventually come out and that the later the disclosure is made, the greater the harm to stock holders will be'"); *In re Wells Fargo Erisa 401(k) Litig.*, No. 16-3405, 2017 WL 4220439, at *6 (D. Minn. Sept. 21, 2017) (illustrating why a prudent fiduciary might conclude delayed disclosure would be better than earlier disclosure of ongoing fraud); *Graham v. Fearon*, No. 16-2366, 2017 WL 1113358, at *5 (N.D. Ohio Mar. 24, 2017) (explaining that disclosure outside of normal reporting requirements could "spook" the market).

Second, Plaintiffs suggest that Defendants could have frozen the ESOP, and held contributions "in cash or some other short-term investment[.]" (Consol. Compl. ¶ 142.) However,

---

[8] This Court has considered Plaintiffs' allegation that the Plan was a "net purchaser" of stock, meaning that it bought more Allergan stock than it sold. (Pl.'s Opp'n Br. at 9-10; *see also* Consol. Compl. ¶ 131.) However, the Plan's status as a net purchaser does not change this Court's conclusion. As the court in *Martone v. Robb* explained, "it would be difficult to conclude that any alternative action that indisputably lowers the company's stock price . . . 'would be so clearly beneficial.'" *See Martone v. Robb*, No. 15-877, 2017 WL 3326966, at *3-4 (W.D. Tex. Aug. 2, 2017) (rejecting a plaintiff's net purchaser argument).

this alternative suffers from the same infirmity as Plaintiffs' first proposal because ERISA mandates disclosure if plan fiduciaries halt new stock fund purchases. *See* 29 U.S.C. § 1021(i) (requiring the plan administrator to provide plan participants with the reasons and expected length of a blackout period); *see also Price v. Strianese*, No. 17-652, 2017 WL 4466614, at *6 n.8 (S.D.N.Y. Oct. 4, 2017) ("ERISA requires plan administrators to notify participants in advance if plan fiduciaries halt new stock fund purchases, and federal securities laws would require the company to disclose that information to the public." (citing *In re Jpmorgan Chase & Co. Erisa Litig.*, 2016 WL 110521, at *3)).  Additionally, courts have held that freezing stock purchases "'could send mixed signals,' such as diminished confidence in [company] stock, 'causing a drop in stock price' that could have done more harm than good to the Fund." *Jander v. Ret. Plans Comm. of IBM*, 272 F. Supp. 3d 444, 452 (S.D.N.Y. 2017) (citations omitted); *see also Fifth Third*, 134 S. Ct. at 2473 (explaining that freezing purchases might signal to the market "that insider fiduciaries viewed the employer's stock as a bad investment"); *Fentress*, 2018 WL 1561820, at *12 (discussing cases holding same in the Second, Fifth, and Sixth Circuits).

Third, Plaintiffs contend that Defendants could have "directed the Fund to hold incoming assets in cash until Company Stock was no longer artificially inflated."  (Consol. Compl. ¶ 153.) However, this alternative fails to meet the *Fifth Third* standard because a prudent fiduciary could have found that creating a large cash buffer could do more harm than good.[9]

Fourth, Plaintiffs propose that at the time of the Actavis-Allergan merger, instead of causing the Plan to purchase significant amounts of Allergan stock, Defendants could have "directed . . . cash assets [from the acquisition] be placed into the Plan's default investment fund,

---

[9] Additionally, courts have explained that "choosing to hold investments in cash, rather than to invest in stock, on the basis of nonpublic information" could subject ESOP fiduciaries to liability for disobeying plan documents and creating an "investment drag." *In re Target Corp. Secs. Litig.*, 275 F. Supp. 3d at 1086-87 (citations omitted).

or allocated based upon [p]articipant['s] instructions[.]"  (Consol. Compl. ¶¶ 157-58.)  This alternative action lacks sufficient detail to establish that a prudent fiduciary could not have found that reducing or redirecting purchases of Allergan stock would cause more harm than good, especially at the time of a merger.  Furthermore, the Supreme Court in *Fifth Third* explained that "ESOP fiduciaries, unlike ERISA fiduciaries generally, are not liable for losses that result from a failure to diversify."  *Fifth Third*, 134 S. Ct. at 2467.  Thus, this would not a viable alternative to the extent that it required the fiduciaries to diversify the Plan.

Plaintiffs also suggest that Defendants could have: sent targeted letters to participants, reminding them to diversify holdings and warning them of the risks of overconcentrating investments in employer securities; resigned as fiduciaries;[10] or sought guidance from the DOL or SEC.  (Consol. Compl. ¶¶ 161, 163, 166.)  These remaining alternative proposals are unpersuasive because it is unclear how they would have resulted in different courses of action.  *See In re Target Corp. Secs. Litig.*, 275 F. Supp. 3d at 1089 ("Sending targeted letters recommending diversified holdings would likely add nothing to the information already provided to [p]lan participants and could pose . . . disclosure problems[.]"); *In re: Idearc Erisa Litig.*, No. 09-2354, 2016 WL 7189980, at * 6 (N.D. Tex. Feb. 26, 2016) (finding that the alternative of resigning as fiduciary was not a plausibly prudent alternative that could have alleviated the Plan's losses); *see also Saumer v. Cliffs Nat. Res. Inc.*, No. 15-954, 2016 WL 8668509, at *6 (N.D. Ohio 2016) (rejecting plaintiffs' prudence claim, which included the argument that defendants could have sought guidance from the DOL or SEC as to what they should have done, because the complaint failed to allege that a prudent fiduciary in defendants' position could not have concluded that the alternative actions would be detrimental).  "Without allegations explaining how any of these alternatives

---

[10] Plaintiffs acknowledge that this would have simply "shift[ed] responsibility to other fiduciaries[.]"  (*Id.* ¶ 164.)

would have been prudent in the circumstances or led to different decisions, Plaintiffs fail to meet

[*Fifth Third's*] pleading standard." *In re Target Corp. Secs. Litig.*, 275 F. Supp. 3d at 1089.

Based on the foregoing, Count I is dismissed.

### C.  Duty of Loyalty (Count II)

Section 404(a)(1)(A) of ERISA provides that

> a fiduciary shall discharge his duties with respect to a plan solely in
> the interest of the participants and beneficiaries and . . . for the
> exclusive purpose of: (i) providing benefits to participants and their
> beneficiaries; and (ii) defraying reasonable expenses of
> administering the plan[.]

29 U.S.C. § 1104(a)(1)(A).

Plaintiffs' Consolidated Complaint alleges that Defendants breached their duty of loyalty

by, *inter alia*: knowingly allowing the investment of the Plans' assets into artificially-inflated

Allergan stock; failing to timely engage independent fiduciaries; placing Defendants' own and/or

Allergan's interests above the interests of the Participants; "omit[ting] or misrepresent[ing]

information regarding or materially related to investments in [Allergan] [s]tock" in their

communications with Plan participants; and failing to protect the Plans from inevitable losses.

(Consol. Compl. ¶¶ 191-202.)

Courts have routinely dismissed duty of loyalty claims that are derivative of insufficiently

pled duty of prudence claims.  *See, e.g.*, *In re Wells Fargo Erisa 401(k) Litig.*, 2017 WL 4220439,

at *7 (dismissing plaintiffs' loyalty claim because "the amended complaint . . . does not clearly

explain how . . . defendants' failure to make an earlier disclosure of the unethical sales practices

could violate their duty of loyalty even if it did not violate their duty of prudence"); *In re Target

Corp. Secs. Litig.*, 275 F. Supp. 3d at 1090 (finding that plaintiffs' breach of duty of loyalty claims,

which were "based on the theories that Defendants should have engaged independent fiduciaries

or disclosed material, nonpublic information[,] [were] derivative of Plaintiffs' breach of the duty of prudence claims" (citing *Brown v. Medtronic, Inc*., 628 F.3d 451, 461 (8th Cir. 2010); *In re Citigroup Erisa Litig*., 662 F.3d 128, 134 (2d Cir. 2011), *abrogated on other grounds by Fifth Third*, 134 S. Ct. 2459; *Wright v. Medtronic, Inc*., No. 09-443, 2011 WL 31501, at *8 (D. Minn. Jan. 5, 2011))).  Here, the allegations set forth in Plaintiffs' breach of loyalty claim are premised on the same theories set forth in Plaintiffs' breach of prudence claim.  Thus, because Count I has already been dismissed, Count II is also dismissed.

### D.  Duty to Monitor (Count III)

"Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA[.]"  *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (citations omitted).  Because this Court has dismissed Plaintiffs' claims for breach of the duties of prudence and loyalty, Plaintiffs' derivative claim for breach of the duty to monitor is also dismissed.  *See Jander*, 205 F. Supp. 3d at 546-47.

### E.  Jury Trial

Even if this matter proceeded to trial, this Court would strike Plaintiffs' jury demand because ERISA claims "are equitable in nature and thus do not entitle [Plaintiffs] to a trial by jury." *McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc*., No. 09-571, 2011 WL 4455994, at *11 (D.N.J. Sept. 23, 2011); *see also Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 79 n.10 (3d Cir. 2012) (citations omitted)); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J*., No. 16-9253, 2017 WL 3610486, at *5 (D.N.J. Aug. 22, 2017) (striking the plaintiff's demand for a jury trial as to its ERISA claims).  Plaintiffs mistakenly interpret *Kirse v. McCullough* to stand for the proposition that whenever money damages are sought, the relief requested is legal and not equitable.  (Pls.' Opp'n Br. at 23-24); *Kirse v. McCullough*, No. 04-1067, 2005 WL 6797091, at

13

*3 (W.D. Mo. May 12, 2005) (finding that the plaintiffs were entitled to a jury trial on their ERISA

claims).  However, the court in *Kirse* also cited to *White v. Martin*, which held that a "[plaintiff's]

remedy under ERISA [was] equitable even though he [sought] money damages." *White v. Martin*,

No. 99-1447, 2002 WL 598432, at *3 (D. Minn. Apr. 12, 2002) (citing *In re Vorpahl*, 695 F.2d

318, 321 (8th Cir. 1982)).   Here, Plaintiffs request restoration of profits to the Plans and Plans'

participants' individual accounts.  (*See generally* Consol. Compl.)  The relief sought would not

result in the "immediate and unconditional payment of money" to Plaintiffs, *White*, 2002 WL

598432, at *1, 3, but would instead "turn[] on a determination of entitlement to [pension] benefits,"

which makes it an "integral part of an equitable action[,]" *In re Vorpahl*, 695 F.2d at 322.  Thus,

Plaintiffs are not entitled to a jury trial.

### III.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.[11]   An

appropriate Order follows.

                                          s/ *Susan D. Wigenton*_____
                                          **SUSAN D. WIGENTON**
                                          **UNITED STATES DISTRICT JUDGE**


Orig:        Clerk
cc:          Leda Dunn Wettre, U.S.M.J.
             Parties

---

[11] Although Plaintiffs have requested to amend their Consolidated Complaint if Defendants' motion is granted, a review of this matter's procedural history shows that, collectively, Plaintiffs have now filed four complaints.  There is nothing to suggest that providing another opportunity to amend the pleadings would be beneficial or result in a different outcome.  *See, e.g.*, *Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) ("[B]ecause Plaintiffs' request was perfunctory and did not point to any additional factual allegations that would cure the complaint, the district court did not abuse its discretion in denying a motion to amend."); *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 12-2652, 2017 WL 82391, at *20 (S.D.N.Y. Jan. 6, 2017) (denying leave to amend where the request was cursory and failed to indicate how the complaint's defects would be cured).